

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-25-1997

# EEOC v. LB Foster Co

Precedential or Non-Precedential:

Docket
96-3469

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"EEOC v. LB Foster Co" (1997). *1997 Decisions.* Paper 206.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/206

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed August 25, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 96-3469

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,
JO ANN WILSON, Intervenor

v.

L.B. FOSTER COMPANY

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

        Appellant

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civ. No. 90-0758)

Argued: April 30, 1997

Before: MANSMANN, MCKEE, Circuit Judges, and
VANARTSDALEN,* District Judge.

(Filed August 25, 1997)

_____

*The Honorable Donald W. VanArtsdalen, United States District Court
Judge for the Eastern District of Pennsylvania, sitting by designation.

        Robert J. Gregory, Esq. (Argued)
        Equal Employment Opportunity
         Commission
        1801 L Street, N.W., Rm. 7032
        Washington, DC 20507

        C. Gregory Stewart, Esq.
        General Counsel
        Equal Employment Opportunity
         Commission
        1801 L Street, N.W., Rm. 7032
        Washington, DC 20507

        Gwendolyn Young Reams, Esq.
        Associate General Counsel
        Equal Employment Opportunity

Commission
1801 L Street, N.W., Rm. 7032
Washington, DC 20507

Lorraine C. Davis, Esq.
Attorney General Counsel
Equal Employment Opportunity
 Commission
1801 L Street, N.W., Rm. 7032
Washington, DC 20507

 Attorneys for Appellant

Elizabeth A. Malloy, Esq. (Argued)
Klett Lieber Rooney & Schorling
One Logan Square, 28th Floor
Philadelphia, PA 19103-6901

Jill M. Lashay, Esq.
Klett Lieber Rooney & Schorling
One Logan Square, 28th Floor
Philadelphia, PA 19103-6901

 Attorneys for Appellees

OPINION OF THE COURT

McKEE, Circuit Judge.

In this appeal, we are asked to review the district court's order awarding attorney's fees pursuant to section 706(k) of Title VII to L.B. Foster Co. as the prevailing defendant in the Title VII action brought by the Equal Employment Opportunity Commission ("EEOC") against that company. For the reasons explained below, we will reverse.

I.

L.B. Foster manufactures and sells rail construction and tubular products. In 1980, Jo Ann Wilson was hired in the company's Houston office. She was later promoted to credit manager. In 1986, following the reorganization of the company's credit department, Wilson relocated to Foster's headquarters in Pittsburgh, Pennsylvania.

A year after her transfer to Pittsburgh, Wilson began expressing a desire to return to Houston. However, Wilson changed her mind after David Minor, the corporate credit manager, was promoted to Assistant Treasurer in December 1987. Minor's promotion created a vacancy in his former

position that Wilson was interested in filling. The corporate credit manager is responsible for the implementation of the company's credit policies and therefore had to possess the "ability to understand and . . . interpret financial and credit information, . . . correspond with customers and salespeople under difficult circumstances . . .[and had to have a] complete knowledge of uniform commercial codes, financing arrangements, commercial contracts, bankruptcy, international trade, bond and lien laws, and various credit instruments, [the] ability to manage as well as motivate subordinates and the ability to interact with management." App. at 565.

In January 1988, Wilson approached Minor and expressed an interest in his old position. She was disappointed to learn that Minor was also considering Steven Hahn for the promotion. Hahn had also transferred

to the company's headquarters after the reorganization of its credit department, and, like Wilson, he was a regional credit manager in the Pittsburgh office. Minor supervised both Hahn and Wilson and, although he regularly interacted with both of them, he was more familiar with Hahn's work. Minor considered Hahn's management style very professional, his credit presentations well constructed, his financial analysis very strong, and his interactions with customers and sales representatives courteous and professional.

Minor interviewed Wilson and Hahn for the position. During her interview, Wilson criticized Hahn and challenged Minor to identify her shortcomings. Minor had criticized Wilson's credit presentations on several prior occasions because information and documents had been missing. Minor was also critical of Wilson's long lunches and telephone mannerisms. Overall, however, Minor regarded Wilson as a valued employee. Wilson did not acknowledge any of these deficiencies in her interview. Instead, she only discussed problems she perceived in Hahn. Minor was generally disappointed by Wilson's interview and regarded her criticism of Hahn as unprofessional.

After considering the qualifications of both candidates, Minor recommended that Hahn receive the promotion because Minor thought that Hahn's analytical, management, and interpersonal skills were superior to Wilson's. Minor also thought that Hahn had demonstrated greater dedication to the company. After Human Resources approved Minor's recommendation, Hahn was informed,

and, two days later, Wilson resigned from her position and told Minor that she intended to file a sex discrimination suit against him and the company. However, Wilson apparently had second thoughts about doing so, and, the very next day, she told Minor that, while her resignation was still effective, she had changed her mind about suing.

A few months after Wilson left the company, a representative of Johnston Pump and Valve Co., one of L.B. Foster's largest customers, called Minor and requested a job reference for Wilson. Minor had provided such references in the past, but he refused to provide the

4

requested reference for Wilson and instead referred the call to the personnel department. Personnel did not give Wilson a reference but merely furnished her dates of employment. Wilson did not receive a job offer from Johnston Pump.

The EEOC brought a Title VII action against the L.B. Foster Co. in 1990 alleging that Wilson had not been promoted because of sexual discrimination. The complaint also alleged that the company had refused to provide the job reference for Wilson in retaliation for her threat to sue after she resigned. Wilson later intervened in the action and asserted similar claims. L.B. Foster Co. moved for summary judgment but that motion was denied, and the case proceeded to a bench trial in the district court.

The EEOC presented evidence suggesting that L.B. Foster's proffered explanation for giving Hahn the promotion--that he was better qualified--was pretextual. That presentation included evidence that Hahn had been criticized for deficiencies prior to his promotion to Minor's former position and that L.B. Foster had reassigned certain territories to Wilson because of those deficiencies. After the close of the EEOC's evidence, the company moved for judgment as a matter of law, but the court deferred ruling on that motion. The court, however, ultimately found in favor of L.B. Foster on both the failure-to-promote and retaliation claims and entered judgment for the company. Thereafter, the company moved for attorney's fees as the prevailing party under section 706(k) of Title VII. The court awarded the requested fees based upon its conclusion that the EEOC's action was meritless, frivolous, unreasonable and without foundation. Both parties agreed that, if Foster were entitled to any counsel fees, the reasonable amount of those fees would be $142,628.50. Accordingly, the court entered judgment in that amount in favor of L.B. Foster. This appeal challenging only the court's determination that L.B. Foster was entitled to any attorney's fees followed.

The district court had jurisdiction pursuant to 28 U.S.C. SS 1331, 1345. We have jurisdiction pursuant to 28 U.S.C. S 1291.

II.

This Court reviews a district court's award of attorney's fees for abuse of discretion. See Washington v. Philadelphia

County Court of Common Pleas, 89 F.3d 1031 (3d Cir. 1996); Brown v. Borough of Chambersburg, 903 F.2d 274 (3d Cir. 1990). "We must defer to the district court's fee determination unless it has erred legally, or the facts on which the determination rests are clearly erroneous." Quiroga v. Hasbro, Inc., 934 F.2d 497, 502 (3d Cir. 1991)(citations omitted). The EEOC contends that the district court erred in finding that its suit was"frivolous, unreasonable, or without foundation" and awarding attorney's fees on that basis.

III.

42 U.S.C. S 2000e-5(k) provides:

>        In any action or proceeding under this subchapter the
>        court, in its discretion, may allow the prevailing party,
>        other than the Commission or the United States, a
>        reasonable attorney's fee (including expert fees) as part
>        of the costs, and the Commission and the United
>        States shall be liable for costs the same as a private
>        person.

42 U.S.C. S 2000e-5(k). The "prevailing party" can be either the plaintiff or the defendant. However, in Christiansburg Garment Co. v. EEOC, 434 U.S. 412 (1978), the Supreme Court clarified that the standard for awarding attorney's fees to prevailing defendants is not the same as the standard for prevailing plaintiffs.

>        In Christiansburg, the Court recognized that while a
>        liberal fees standard should be used for those parties
>        whose suits Congress wished to encourage, and who
>        needed this encouragement to bring the suits, a
>        stricter standard was appropriate for defendants, who
>        needed no encouragement to defend suits against them
>        and who were not vindicating an important public
>        policy.

Dorn's Transp., Inc. v. Teamsters Pension Trust Fund, 799

F.2d 45, 49 (3d Cir. 1986).

Prevailing plaintiffs "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." Id. at 416-17 (internal quotations

omitted). The rationale for this rule is twofold. First, "the plaintiff is the chosen instrument of Congress to vindicate `a policy that Congress considered of the highest priority.' " Id. at 418. Second, "when a district court awards counsel fees to a prevailing plaintiff, it is awarding them against a violator of federal law." Id.

These considerations are wholly absent when the prevailing party is a defendant, and, therefore, a higher standard applies. In Christiansburg Garment, the Court defined that standard as follows:

> [A] district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.1

Id. at 421. "[F]rivolous, unreasonable, or without foundation," in this context, implies "groundless . . . rather than simply that the plaintiff has ultimately lost his case." Id. "[I]t is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." Id. at 421-22. Such post hoc reasoning "would substantially add to the risks inhering in most litigation and would undercut the efforts of Congress to promote the vigorous enforcement of the provisions of Title VII." Id. at 422. Thus, we have previously stated "It is clear from Christiansburg that attorney's fees [to a prevailing Title VII defendant] are not routine, but are to be only sparingly awarded." Quiroga, 934 F.2d at 503.

Several courts of appeals have reversed fee awards to prevailing defendants in lawsuits brought by the EEOC where these guiding principles have been misapplied. See, e.g., EEOC v. Bruno's Restaurant, 13 F.3d 285 (9th Cir. 1993); EEOC v. Reichhold Chems., Inc., 988 F.2d 1564 (11th Cir. 1993); EEOC v. Kenneth Balk & Assocs., Inc., 813 F.2d 197 (8th Cir. 1987); EEOC v. St. Louis-San Francisco Ry. Co., 743 F.2d 739 (10th Cir. 1984). But see EEOC v.

_____

1. The standard is the same when the Commission is the losing plaintiff.

7

Pierce Packing Co., 669 F.2d 605 (9th Cir. 1982)(affirming award of attorney's fees to employer because the EEOC "fail[ed] to comply with both its enabling act and its regulations"). In contrast, "[c]ases where findings of `frivolity' have been sustained typically have been decided in the defendant's favor on a motion for summary judgment or a . . . motion for involuntary dismissal. In these cases, the plaintiffs did not introduce any evidence to support their claims. [On the other hand, i]n cases where the plaintiffs introduced evidence sufficient to support their claims, findings of frivolity typically do not stand." Sullivan v. School Bd., 773 F.2d 1182, 1189 (11th Cir. 1985)(citations omitted).

In determining if an award of counsel fees to a Title VII defendant is appropriate, courts should consider several factors including "(1) whether the plaintiff established a prima facie case; (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits." Id.2 These factors are, however, guideposts, not hard and fast rules. "Determinations regarding frivolity are to be made on a case-by-case basis." Sullivan, 773 F.2d at 1189.

Even though an inquiry into an award of attorney's fees to a Title VII defendant is individualized, specific examples of awards that have been reversed assist in illustrating the policy behind the rule enunciated in Christiansburg. EEOC v. Kenneth Balk & Assocs., 813 F.2d 197 (8th Cir. 1987) is one example. There, the EEOC filed a Title VII action on behalf of a former employee alleging that the employer, Kenneth Balk Associates ("KBA"), had discharged her on the basis of race. The case was tried for three days before being continued to permit the parties to conduct additional discovery. The court then heard more evidence and granted the parties time to file post-trial briefs and proposed

_____

2. But see Greenberg v. Hilton Int'l Co., 870 F.2d 926, 940 (2d Cir. 1989)("Cases that are ultimately viewed as frivolous may well survive motions to dismiss under a system of notice pleading that does not require factual detail and even motions for summary judgment in which the evidence may be presented in sketchy fashion and credibility may not be taken into account.").

8

findings of fact and conclusions of law. Ultimately, judgment was entered in favor of KBA; the court awarded counsel fees; and the EEOC appealed.

The Court of Appeals for the Eighth Circuit ruled that the district court had misapplied the Christiansburg standard. The procedural history of the case suggested that the EEOC's claim was not baseless as KBA neither sought a pretrial dismissal nor moved for summary judgment or a directed verdict. In addition, the district court had permitted the parties to file post-trial briefs and proposed factual and legal conclusions. Furthermore, the district court's findings of fact and conclusions of law disclosed that the court's ruling was based upon its credibility determinations. See id. at 198. Thus, the record suggested that the EEOC had some basis for its claim, and the court of appeals reversed the award of counsel fees. See id. In doing so, the court stated "[h]owever unpersuasive the EEOC's evidence ultimately proved to be, this evidence provided `some basis' for the EEOC's claim. Accordingly, the district court misapplied the Christiansburg standard . . . ." Id.; see also Bruno's Restaurant, 13 F.3d at 290 (concluding that the "district court failed to exercise its discretion within the permissible bounds of 42 U.S.C. S 2000e-5(k) and within the requirements of Christianburg in awarding fees on the ground that the EEOC presented no credible evidence of discriminatory conduct").

IV.

Here, the EEOC alleged sex discrimination and illegal retaliation against Wilson. We consider in turn the findings the district court made with respect to each allegation to determine whether those claims were "frivolous, unreasonable, or without foundation."

A. Sex Discrimination Claim

The EEOC presented a classic pretext-based case of sex discrimination. Wilson was obviously a member of a protected class; she applied for a promotion for which she was qualified; and the promotion went to a male. The district court correctly concluded that these allegations

made out a prima facie case on behalf of Wilson. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). The EEOC then presented evidence that L.B. Foster's proffered non-discriminatory explanation for its decision to promote Hahn, the male applicant, over Wilson

was a fabrication. This included evidence "that Wilson had greater management experience, that Wilson was assigned a broader range of job duties, that Hahn had problems in performing his job, and that Wilson, on occasion, had to assist Hahn with his accounts." Appellant Br. at 17. Clearly, a reasonable fact finder could conclude from this evidence that L.B. Foster discriminated against Wilson on the basis of sex. See Bray v. Marriott Hotels, 110 F.3d 986, 990 (3d Cir. 1997)("The inference [of pretext], along with the components of the plaintiff 's prima facie case, allow a jury to conclude that the employer was actually motivated by illegal bias . . . ."); Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1066-67 (3d Cir. 1996)(same), cert. denied, 117 S. Ct. 2532 (1997).

It can hardly be said that the EEOC's claim was frivolous merely because the court (sitting as the fact finder) rejected the EEOC's evidence.[3] See app. at 584 ("Wilson has not established her burden of proving pretext under Hicks that the company's articulated reasons for not promoting her are false and that sex discrimination was the real reason."). On the contrary, the EEOC's proof, if credited, would have been sufficient to support a verdict in favor of the EEOC. Accordingly, we cannot agree that the claim was frivolous or without foundation. See Bruno's Restaurant, 13 F.3d at

_____

3. The district court's conclusion that "the evidence clearly and convincingly established that there was no sexual discrimination involved in Foster's [decision]" suggests that it was persuaded by Foster's
evidence that Minor had promoted and retained a number of female employees. However, such evidence is not necessarily relevant to whether the company discriminated against Wilson. See Furnco Constr. Corp. v. Waters, 438 U.S. 567, 579 (1978)(a racially balanced work force "cannot immunize an employer from liability for specific acts of discrimination"); Bell v. Bolger, 708 F.2d 1312, 1318 (8th Cir. 1983)("Merely because other members of a protected class . . . were recommended [for position denied the plaintiff] does not demonstrate an absence of discrimination.").

10

290 ("The district court failed to exercise its discretion . . . within the requirements of Christianburg in awarding fees on the ground that the EEOC presented no credible evidence of discriminatory conduct." (emphasis added)).

Here, it appears that the district court "failed to heed the Supreme Court's warning in Christiansburg against the `temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his

action must have been unreasonable or without foundation.' " Id. at 290 (quoting Christiansburg, 434 U.S. at 421-22). "Assessing fees against the EEOC simply because it did not prevail undercuts the Congressional effort `to promote the vigorous enforcement of the provisions of Title VII.' " Bruno's Restaurant, 13 F.3d at 290 (quoting Christiansburg, 434 U.S. at 422). Accordingly, the district court abused its discretion in awarding L.B. Foster its fees for defending against the substantive claim under Title VII.

B. Retaliation Claim

The EEOC's retaliation claim alleged that Minor refused to provide a reference for Wilson after she had informed him that she intended to file a discrimination claim. Wilson apparently "assumed that [she] would get a reference just like all of the other people who had been at Foster." App. at 110. However, when Johnston Pump sought a reference for Wilson, Minor refused to provide one. See app. at 295. It is not disputed that L.B. Foster had routinely provided such references for others in the past.

In his deposition, Minor testified that the reason he did not provide a reference for Wilson over the telephone was that Linda Terpenning, who worked in the personnel department, had instructed him to refer all such calls to her. See app. at 100, 152. At trial, however, Minor testified that his refusal had more to do with not wanting to hurt Wilson by giving her a negative reference: "I felt that I would only hurt Jo Ann by giving [Johnston Pump] a truthful reference. . . . I discussed it with human resources [ ] what would happen if someone called me because I didn't want to hurt Jo Ann. It was decided the best thing for me

11

to do would be to refer [requests] to the human resources area." App. at 295. Minor's testimony was directly contradicted by Terpenning: "Q: Did you ever direct Mr. Minor that reference calls should be directed to your attention, reference calls for Wilson? A: For Wilson, no." App. at 355 (Direct Examination of Terpenning). We have previously stated that a district court can consider an employer's inconsistent explanations for the adverse action it took in determining whether that employer discriminated against the plaintiff. See Waddell v. Small Tube Prods., Inc., 799 F.2d 69, 73 (3d Cir. 1986). Inconsistencies are no less relevant in adjudicating a claim of illegal retaliation under Title VII.

Minor also testified that, when Johnston Pump called, he

did not believe that Wilson was still contemplatingfiling a discrimination charge: "Jo Ann told me when she came in the office the following Monday that she had decided that she would no longer pursue [a sex discrimination charge] and that was not a course of action she was taking. So, when the call came from Johnston Pump, there was no pending suit against L.B. Foster Company." App. at 293-94. The district court apparently credited that testimony. See app. at 589. However, Minor had taken notes in which he recorded "she was considering filing a [discrimination] charge." App. at 377.

On this record, the district court concluded that Wilson had not established a prima facie case of retaliation because she had not presented evidence of an adverse employment action and, presumably on that basis, the district court concluded that the EEOC's retaliation claim was frivolous. We disagree.

The district court improperly focused on the action of the prospective employer and not L.B. Foster in determining whether the EEOC had presented evidence of an adverse employment action. The district court concluded that "[t]here is no evidence that Foster's response to the telephone call from Johnston Pump negatively influenced Wilson's application for employment with Johnston Pump." App. at 588. However, that is not the proper test. 4 All that

_____

4. L.B. Foster argues that, "[i]n a case in which a plaintiff alleges denial
of a reference is retaliatory, the plaintiff must demonstrate that the

is required to establish a prima facie case of retaliatory discrimination is proof (1) that the plaintiff engaged in protected activity, (2) that the employer took an adverse action against her, and (3) that a causal link exists between the protected activity and the employer's adverse action. Kachmar v. Sungard Data Sys., Inc., 109 F.3d 173 (3d Cir. 1997). An employer who retaliates can not escape liability merely because the retaliation falls short of its intended result.

Here, the EEOC clearly established a prima facie case of retaliatory discrimination. Wilson was engaged in protected activity when she informed Minor that she intended to file a sex discrimination charge. See Barber v. CSX Distribution Servs., 68 F.3d 694, 702 (3d Cir. 1995)(describing indicia of protected activity); Sumner v. United States Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990)(same). Wilson's

subsequent statement to Minor that she had changed her
mind about filing a charge does not negate her earlier

_____

employer's denial of the reference caused an adverse employment
action," specifically that the prospective employer would have hired the
employee but for the absence of the reference. Appellee Br. at 34 (citing
Sherman v. Burke Contracting, Inc., 891 F.2d 1527, 1538 (11th Cir.
1990)). That contention is only true in circumstances--not present here
--where the plaintiff brings a damages claim against her former
employer. See id. at 2538 n.2 ("[I]n order to make out a damages claim
against the former employer whose blacklisting has prevented the ex-
employee from working elsewhere, the ex-employee would have to show
that a particular employer would have hired him but for the retaliatory
comments concerning his involvement in activity protected by Title VII."
(emphasis added)). The issue of whether Johnston Pump would have
hired Wilson is not at all relevant to whether L.B. Foster is liable for
retaliatory discrimination. See Hashimoto v. Dalton, __ F.3d __, 1997 WL
366013, at *3 (9th Cir. 1997)("There is little question that the
dissemination of adverse employment references can constitute a
violation of Title VII if motivated by discriminatory intent. Thus, it is
beside the point that Lowery's dissemination of the negative job reference
was not the reason Hashimoto did not get the job with the Army."
(internal quotations and citation omitted)); Smith v. Secretary of Navy,
659 F.2d 1113, 1120 (D.C. Cir. 1981)("An illegal act of discrimination
whether based on race or some other factor such as a motive of reprisal
is a wrong in itself under Title VII, regardless of whether that wrong
would warrant an award of [damages].").

13

protected activity and does not preclude the EEOC from
having established a prima facie case as to Minor's attempt
to retaliate for the threat. Wilson's purported change of
heart may have been relevant to the district court's
ultimate determination that the EEOC's evidence was not
sufficient to prevail on that claim, but it does not establish
that the claim itself was frivolous or unfounded.

The EEOC presented evidence that Minor had personally
given telephone references to prospective employers when
they called about former employees, and these references
went beyond merely providing dates of employment. App. at
293. In fact, such telephone references seemed a matter of
course until Johnston Pump sought one for Wilson.5

In addition Wilson's protected activity and Minor's refusal
to provide a reference are sufficiently close together to allow
a reasonable fact finder to find the required element of
causation. See Kachmar, 109 F.3d at 177 ("Cases in which
the required causal link has been at issue have often
focused on the temporal proximity between the employee's

protected activity and the adverse employment action, because this is an obvious method by which a plaintiff can proffer circumstantial evidence `sufficient to raise the inference that her protected activity was the likely reason for the adverse action.' ").

Nevertheless, the district court concluded that"[b]ecause Foster provided a telephone reference which confirmed Wilson's dates of employment, and it is undisputed that Minor would have given Wilson a poor recommendation due to the circumstances under which she left, plaintiffs have not established that Foster took adverse action against Wilson." App. at 588. However, given the inconsistencies in Minor's testimony, the company's conduct on behalf of other employees, and the temporal proximity of Wilson's threat and Minor's refusal to provide a reference, the EEOC's allegation of illegal retaliation is clearly not

_____

5. The district court found that Minor provided such references for only two types of employees, those who had previously informed Minor that they had given his name as a reference and those employees who had been laid off in 1986. App. at 577. Minor's own testimony, however, does not suggest these limits. See app. at 293.

14

frivolous. See Clark v. Township of Falls, 890 F.2d 611, 618-19 (3d Cir. 1989)("[A] wide panoply of adverse employment actions may be the basis of employment discrimination suits under Title VII of the Civil Rights Act . . . .").

We offer no opinion on whether this evidence was sufficient to carry the day but merely point out that it was enough to establish a prima facie case of retaliatory discrimination. Accordingly, we conclude that there was some factual basis for the EEOC's retaliation claim, and the district court therefore abused its discretion in awarding L.B. Foster its fees on that claim. See EEOC v. Reichhold Chems., Inc., 988 F.2d 1564, 1572 (11th Cir. 1993)(concluding that, where plaintiff met her initial burden of establishing a prima facie case of retaliatory discrimination, "[that claim was] not frivolous and the district court abused its discretion in awarding fees against the EEOC").

C. Request for Back Pay

The district court's only explicit finding of frivolity related to the EEOC's request for back pay. See Addendum at 4. The EEOC contended that "Wilson was entitled to full back

pay for the post-resignation period because she would not have left her job if not for the discriminatory denial of promotion."6 Appellant Br. at 26. The district court regarded this contention as frivolous since Wilson was not constructively discharged. See Addendum at 4 ("The EEOC's arguments that Wilson was entitled to back pay even though she was [not] constructively discharged were frivolous.").

The constructive discharge rule to which the court was referring provides that "employees are entitled to awards

_____

6. Originally, the EEOC sought back pay "based solely on the difference between the amount that Wilson would have received had she been promoted and the amount that she made as regional credit manager." Appellant Br. at 26. It later amended its request to conform to Wilson's requested relief for the full amount she would have received as regional credit manager had she not resigned. See Appellant Br. at 26.

15

such as back pay past the date of resignation and reinstatement only if they were actually or constructively discharged from their employment." Ezold v. Wolf, Block, Schorr & Soliscohen, 758 F. Supp. 303, 307 (E.D. Pa. 1991), rev'd, 983 F.2d 509 (3d Cir. 1992). The rationale behind this rule is that " `society and the policies underlying Title VII will be best served if, wherever possible, unlawful discrimination is attacked within the context of existing employment relationships.' " Id. Courts of appeals "have been nearly unanimous in their application of the constructive discharge rule, whereby victorious Title VII plaintiffs who have left their employment with the defendant but who were not constructively discharged by the defendant are only entitled to a remedy covering the period during which the discrimination occurred up to the date of resignation." Id. at 306. However, one court of appeals has held that a back pay award is proper, whether or not the employer was constructively discharged, when the employee "end[s] his employment for reasons beyond his control, reasons which were causally linked to the [employer's] wrongful denial of a promotion." Wells v. North Carolina Bd. of Alcoholic Control, 714 F.2d 340, 342 (4th Cir. 1983)(upholding back pay award to employee who terminated his stock-clerk position after he was wrongfully denied a promotion to sales clerk and his employer refused his request for lighter duties to accommodate a work-related back injury); see also Helbling v. Unclaimed Salvage & Freight Co., Inc., 489 F. Supp. 956, 963 (E.D. Pa. 1980)(rejecting notion that the back pay award to an employee discriminatorily denied a promotion on the basis

of her gender should terminate on the date of her resignation)("The back pay award, therefore, must be based on the period running from the date she should have been promoted to manager to the date the store closed-- the period it can be assumed she would have held the job to which she was entitled.").

This Court has not yet taken a position under the circumstances here where the claim of constructive discharge is absent. We have merely recognized that "[c]lassifying a termination as a constructive discharge rather than a voluntary quit has significant ramifications with respect to the scope of relief." Goss v. Exxon Office

16

Sys. Co., 747 F.2d 885, 887 (3d Cir. 1984). Since we have not yet ruled on this precise issue and since one of our sister courts of appeals has ruled that back pay would be recoverable under the facts alleged by the EEOC, the district court's determination that the EEOC's request for back pay was frivolous cannot stand.

V.

For the reasons set forth above, we will reverse the district court's order dated June 20, 1996 granting L.B. Foster its attorney's fees.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

17