**Jeffrey CURRAN, Plaintiff,**

**v.**

**SOUTHEASTERN  PENNSYLVANIA TRANSPORTATION  AUTHORITY, Ronald Sharpe, and Lieutenant Vandyke Rowell, Defendants.**

**No.  CIV. A. 98–134.**

United States District Court, E.D. Pennsylvania.

Aug. 15, 2000.

record in an attempt to locate support for the Parole Commission's decision.  *See Furnari,*

218 F.3d 250.

Thomas H. Kohn, Philadelphia, PA, for Plaintiff.

Gaetan J. Alfano, Philadelphia, PA, for Defendants.

## MEMORANDUM

LOWELL A. REED, Jr., Senior District Judge.

This civil rights action comes before this Court from the docket of the late Judge Joseph L. McGlynn, Jr., who granted summary judgment in favor of defendants Southeastern Pennsylvania Transportation Authority ("SEPTA"), Ronald Sharpe, and Vandyke Rowell. *See Curran v. SEPTA,* No. 98–124, 1999 WL 79504, 1999 U.S. Dist. LEXIS 521 (E.D.Pa.), *aff'd,* 191 F.3d 444 (3d Cir.1999). SEPTA now seeks attorneys fees and costs, pursuant to 42 U.S.C. § 1988 and 28 U.S.C. § 1927. Upon consideration, the request of SEPTA will be denied.

1.  Specifically, plaintiff alleged that he was retaliated against for filing a complaint with the Internal Affairs division and making statements concerning the conduct of a sergeant in SEPTA's police force with respect to drugs that were found on the tracks in a SEPTA station.

## I.  BACKGROUND

Plaintiff Jeffrey Curran, who was employed by SEPTA as a police officer, filed this action pursuant to 42 U.S.C. § 1983 and the Constitution of the Commonwealth of Pennsylvania, alleging that SEPTA and the individual defendants had retaliated against him for exercising his right of free speech.[1] SEPTA filed a motion for summary judgment, arguing that plaintiff's § 1983 claim was time barred and failed on the merits.

Judge McGlynn performed a careful analysis of the events that formed the basis of plaintiff's § 1983 claim. Plaintiff having conceded that three of the allegedly retaliatory incidents fell outside the limitations period,[2] Judge McGlynn analyzed the remaining events that were not facially time-barred. As to the first event, SEPTA's alleged failure to promote Curran on two occasions, Judge McGlynn concluded that the lapse of time (more than two years) between plaintiff's protected speech and the failure to promote was "too great to permit an inference that retaliation played a part." *Curran,* 1999 WL 79504, 1999 U.S. Dist. LEXIS 521, at *9. Likewise, Judge McGlynn concluded that there was no evidence connecting the dots between plaintiff's protected speech and SEPTA's decision to condition a leave request filed by plaintiff, suggesting that too much time had passed to allow an inference of a causal nexus. *See id.* at *11. Judge McGlynn also considered whether plaintiff's exercise of his First Amendment rights was a substantial or motivating factor in SEPTA's decision to transfer plaintiff to day work, and concluded that "a change in work assignments made more than four years after his protected speech

2.  SEPTA makes much of this "admission" concerning the first three events, however plaintiff did not in any way concede that these three events were frivolous or unimportant to his case, or even that they were time-barred. Rather, plaintiff contended that these three events were not time-barred because they were part of a continuing violation by SEPTA.

is not sufficient to make out a case of retaliation." *Id.* at *11–12.

Finally, Judge McGlynn determined that plaintiff's claim under the Constitution of the Commonwealth of Pennsylvania "raises a difficult and unsettled question of Pennsylvania law" and refrained from exercising supplemental jurisdiction over that question. *See id.* at *12. Judge McGlynn therefore granted summary judgment as to plaintiff's § 1983 claim and dismissed without prejudice plaintiff's constitutional claim.

## II. ANALYSIS

▪▪▪ I start my consideration of the request for attorneys' fees from a premise the Supreme Court has consistently reaffirmed: that in the United States, a losing party in a lawsuit usually is not required to pay the attorneys' fees of the prevailing party. *See Independent Fed'n of Flight Attendants v. Zipes,* 491 U.S. 754, 758, 109 S.Ct. 2732, 105 L.Ed.2d 639 (1989) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975)). This case involves a congressionally created exception to that rule, 42 U.S.C. § 1988, which provides, in relevant part:

> In any action or proceeding to enforce a provision of section[ ] ... 1983 ... of this title, ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

42 U.S.C. § 1988. The Supreme Court has interpreted § 1988 to require different analyses that turn on whether the plaintiff or the defendant is the prevailing party. When a plaintiff prevails, he or she should "ordinarily recover an attorney's fee unless

special circumstances would render such an award unjust." *Newman v. Piggie Park Enters., Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968).[3] However, when a defendant prevails, "a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *See Christiansburg Garment Co. v. Equal Employment Opportunity Commission,* 434 U.S. 412, 421, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978).

The latter inquiry is a delicate one. On the one hand, the Supreme Court has cautioned against courts engaging in *"post hoc* reasoning by concluding that, because a plaintiff did not ultimate prevail, his action must have been unreasonable or without foundation." *Id.* at 422, 98 S.Ct. 694. Such a hindsight-based approach could deter the filing of meritorious lawsuits and undermine the statutory incentives designed to encourage the judicial protection of civil rights. *See id.* On the other hand, the Supreme Court has held that the prevailing defendant need not make a showing of subjective bad faith on the part of plaintiff to recover attorneys' fees, as such a stiff requirement would " 'distort' the 'fair adversary process.' " *Zipes,* 491 U.S. at 760, 109 S.Ct. 2732 (quoting *Christiansburg,* 434 U.S. at 419, 98 S.Ct. 694).[4]

▪▪▪ Defendants SEPTA, *et al.,* were unquestionably the "prevailing party," as summary judgment was granted in their favor on plaintiff's § 1983 claim, and the state claim was dismissed without prejudice. Thus, the question in this case is whether plaintiff's cause of action was frivolous. The Court of Appeals for the Third Circuit has identified 3 factors for courts

---

3. The Court reasoned in *Piggie Park* that favoring the recovery of attorneys' fees by plaintiffs in civil rights cases was consistent with intention of Congress that those injured by discrimination would act as "private attorney[s] general" by ferreting out and redressing such violations. *See Piggie Park,* 390 U.S. at 402, 88 S.Ct. 964.

4. While *Christiansburg* and *Zipes* were Title VII cases, the Supreme Court held in *Hensley v. Eckerhart,* 461 U.S. 424, 433 n. 7, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), that the analysis set forth in *Christiansburg* applies to § 1983 cases as well. Thus, the *Christiansburg* analysis is properly applied in this § 1983 action.

to consider in determining whether a plaintiff's claim was frivolous or without foundation: "(1) whether the plaintiff established a *prima facie* case; (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the claims prior to trial or had a full-blown trial on the merits." *See EEOC v. L.B. Foster Co.*, 123 F.3d 746, 750 (3d Cir.1997) (quoting *Sullivan v. School Bd.*, 773 F.2d 1182, 1189 (11th Cir.1985)). This Court finds that plaintiff in this case certainly pled a *prima facie* case and, but for the complex statute of limitations problems discussed below, may have had sufficient evidence to establish a *prima facie* case at summary judgment. The parties have offered no information concerning settlement discussions or whether defendants made any settlement offers. There was no trial here. But this is not the end of the inquiry.[5]

The Court of Appeals for the Third Circuit noted in *Foster* that the list of factors, is not exhaustive, but are mere "guideposts," and that "[d]eterminations regarding frivolity are to be made on a case-by-case basis." *Id.* (quoting *Sullivan*, 773 F.2d at 1189). I believe there are other salient factors at work in this case. In *Sullivan*, the case relied upon heavily by the Court of Appeals for the Third Circuit in *Foster*, the Court of Appeals for the Eleventh Circuit made the following observation:

> Cases where findings of 'frivolity' have been sustained typically have been decided in the defendant's favor on a motion for summary judgment or a Fed. R.Civ.P. 41(b) motion for involuntary dismissal. In these cases, the plaintiffs did not introduce any evidence to support their claims. In cases where plaintiffs introduced evidence to support their claims, findings of frivolity typically do not stand.

*Sullivan*, 773 F.2d at 1189 (citing cases). SEPTA does not contend that this plaintiff failed to introduce evidence to support his claims, nor could it so contend; plaintiff submitted no less than 36 exhibits in opposition to defendant's motion for summary judgment. From my review of that evidence, I find that it was substantial and probative, and the sheer amount of evidence belies the notion that the claim was frivolous. That this evidence was insufficient for plaintiff to prevail at summary judgment is not enough for defendants to prevail on a motion for attorneys' fees.

Plaintiff's retaliation claim failed largely on the basis of on a complex legal interplay between the continuing violations theory and the element of a retaliation claim that is often the most difficult to prove; the establishment of a causal nexus between the protected activity and the adverse employment action. Judge McGlynn concluded that the lack of temporal proximity between the protected activity of plaintiff and the adverse employment actions that took place within the statutory period was fatal to plaintiff's effort to establish a causal nexus. However, plaintiff had alleged adverse events that were much closer in time to plaintiff's exercise of his First Amendment rights and argued that the court should consider those events under a continuing violation theory.

I conclude that plaintiff was, therefore, in a bit of a Catch 22; in order to establish the third prong of his retaliation claim, he needed to show that adverse actions took place soon after his protected activity, yet in order to establish a continuing violation theory (and thereby ensure consideration of those events that took place soon after the protected activity), plaintiff needed to show that actions that took place long after the protected activity were motivated by retaliatory animus, which, Judge

---

5. In *Izquierdo v. Sills*, No. 97–495, 1999 WL 1427351, 1999 U.S. Dist. LEXIS 20820 (D.Del. Dec. 21, 1999), the court held that despite the fact that plaintiff had failed to establish a *prima facie* case on any of his claims and summary judgment had been granted in defendants' favor prior to trial, the claim was not frivolous and defendants' motion for fees under § 1988 was denied.

McGlynn concluded he could not do largely because those events took place long after the protected activity. Plaintiff's effort to establish a *prima facie* case and his effort to defeat the statute of limitations defense were thus both dependent on and in tension with one another. I conclude that the complexity of the relationship between the statute of limitations and the merits of the case reveals this action to be far from frivolous.

While plaintiff and his counsel were, or should have been, aware of the hurdle the statute of limitations posed to the success of the § 1983 claim, I find that plaintiff mounted a cogent and substantive legal and evidentiary effort to surmount that hurdle that was neither unreasonable nor baseless. The fact that the effort was ultimately unsuccessful does not mean it was frivolous. I conclude that there is an absence of compelling evidence or argument that plaintiff's case was frivolous. Accordingly, SEPTA will not recover attorneys' fees pursuant to 42 U.S.C. § 1988.[6]

SEPTA also seeks to recover fees under 28 U.S.C. § 1927, which provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the Court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. The Court of Appeals for the Third Circuit has held that a finding of bad faith is a necessary predicate to the recovery of fees under § 1927. *See Martin v. Brown*, 63 F.3d 1252, 1264 (3d Cir.1995) (citing *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 484 (3d Cir.1987) (citing *Baker Indus., Inc. v. Cerberus Ltd.*, 764 F.2d 204, 208–09 (3d Cir.1985))). This means that the conduct "must be of an egregious nature, stamped by bad faith that is violative of recognized standards in the conduct of litigation." *See Baker*, 764 F.2d at 208 (citing *Colucci v. New York Times Co.*, 533 F.Supp. 1011, 1014 (S.D.N.Y.1982)).[7]

The gravamen of SEPTA's complaint is that in response to a request by SEPTA, counsel for plaintiff provided a list of 37 witnesses, thereby compelling SEPTA to depose 23 of them in preparation for trial. The depositions revealed that a dozen of those deposed witnesses knew nothing about plaintiff's claims. In SEPTA's view, counsel's identification of numerous witnesses with no knowledge of the circumstances surrounding this action constitutes a multiplication of the proceedings in this action and vexatious conduct. Accordingly, SEPTA seeks a ruling under § 1927 requiring plaintiff's counsel to pay the attorneys' fees arising out of those deposition.

■ I disagree. The list of witnesses sent from counsel for plaintiff to SEPTA was included in a letter that began by characterizing the list as "a *tentative* list of Plaintiff's *potential* witnesses." (Plaintiff's Exh. 1, Letter from Michael J. Dougherty, Sept. 15, 1998) (emphasis added). Despite the fact that the list of witnesses was

---

**6.** SEPTA relies heavily on *Allen v. Temple Univ.*, No. 95–3459, 1996 WL 547213, 1996 U.S. Dist. LEXIS 14064 (E.D.Pa. Sept. 25, 1996), a case in which a district court found a case to be frivolous and awarded fees under § 1988. However, in that case, the Court concluded that "[t]here was absolutely no factual support for her claims," and used such terms as "ludicrous," "unreasonable," and "outrageous" to characterize the plaintiff's contentions and claims. *See id.* at * 5, 6, 8, 1996 WL 547213. Judge McGlynn used no such language in granting summary judgment in this case because this is a much closer call than *Allen* was, and involves complex legal and factual issues. That is why the result in this case is different from the result in *Allen*.

**7.** Bad faith is required under § 1927 because "[i]f it were otherwise, an attorney who might be guilty of no more than a mistake in professional judgment in pursuing a client's goals might be made liable for excess attorneys' fees under section 1927." *See Baker*, 764 F.2d at 209.

characterized in such conditional terms, SEPTA noticed and conducted depositions of nearly two-thirds of the people on the list at a substantial cost. This was wholly unnecessary. The reasonable, efficient, and cost-effective approach to such a lengthy list of witnesses would have been to conduct investigatory interviews to assess what the witnesses knew about the case.[8] The only individual who engaged in an unnecessary and unreasonable multiplication of proceedings in this action was the person on SEPTA's legal team who chose to notice 23 depositions when 23 telephone calls or interviews likely would have sufficed or significantly reduced the number of depositions needed.[9] It is not plaintiff's fault that SEPTA bought a tuxedo for a hay ride.

Defendants have not shown that plaintiff was acting in bad faith, vexatiously, or for the purpose of multiplying proceedings when he provided to SEPTA a "tentative" list of "potential" witnesses that included witnesses with no knowledge of the events underlying this action. Because bad faith is a prerequisite to awarding fees under § 1927, and because I find none here, no fees will be awarded to SEPTA pursuant to § 1927.

## III. CONCLUSION

SEPTA incurred legal fees in the process of successfully defending itself against plaintiff's allegations. However, absent proof of frivolousness or vexatiousness, SEPTA's victory does not entitle it to recoup those fees. Upon a careful examination of the briefs, the exhibits, and the record in this case, I conclude that this case was not frivolous and that plaintiff's conduct in the course of litigation was not vexatious.

An appropriate Order follows.

### *ORDER*

**AND NOW,** this 15th day of August, 2000, this Court having considered the motion of defendant Southeastern Pennsylvania Transportation Authority ("SEPTA") for an award of attorneys' fees pursuant to 42 U.S.C. § 1988 and 28 U.S.C. § 1927 (Document No. 46), the briefs and exhibits in support thereof, and plaintiff's opposition thereto, and having concluded, for the reasons set forth in the foregoing memorandum, that defendant has not shown plaintiff's action to be frivolous in a manner sufficient to warrant an award under 42 U.S.C. § 1988, and that defendant has not shown that plaintiff's conduct with respect to naming witnesses was vexatious under § 1927, it is **IT IS HEREBY ORDERED** that SEPTA's motion for attorneys' fees under § 1988 and § 1927 is **DENIED.**

8. This would have been simple for SEPTA, as many, if not most, of these potential witnesses were SEPTA employees. In fact, all 12 of the witnesses who SEPTA claims denied at their depositions any knowledge of the issues in this case are or were SEPTA employees. Thus, these individuals were readily accessible to SEPTA, and SEPTA's decision to depose them instead of simply contacting and interviewing them informally constituted litigious overkill. Plaintiff could not have foreseen that his tentative list of potential witnesses would have caused SEPTA to depose rather than interview these witnesses, particularly in light of the fact that the witnesses all worked for SEPTA. Thus, SEPTA, not plaintiff, is responsible for the generation of these fees.

9. SEPTA contends that plaintiff's later inclusion of the 12 unnecessary witnesses in his pre-trial memorandum, despite plaintiff's knowledge from the depositions that these individuals knew nothing of the issues in this action, is further proof of his bad faith. But the pre-trial memorandum is irrelevant to the question of whether plaintiff vexatiously multiplied the proceedings in this action. Defendants had already taken the depositions by the time the pre-trial memorandum was filed and therefore knew these witnesses were irrelevant and took no action on the basis of their inclusion in the pre-trial memorandum. Thus, plaintiff's act of including the 12 witnesses did not further "multiply the proceedings" in this case, because defendant incurred no further legal fees because of their inclusion.