

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-3-2003

# Hoechstetter v. Pittsburgh

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1854

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Hoechstetter v. Pittsburgh" (2003). *2003 Decisions.* Paper 147.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/147

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

<u>NOT PRECEDENTIAL</u>

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 03-1854
_____

DAVID HOECHSTETTER AND MICHAEL PAPARIELLA,

Appellants,

v.

CITY OF PITTSBURGH

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

District Court Judge: The Hon. Donald E. Ziegler
(D.C. Civil No. 01-cv-01337)
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
October 21, 2003

Before: ALITO, FUENTES, and ROSENN, <u>Circuit Judges</u>.

(Opinion Filed: November 3, 2003)
_____

OPINION OF THE COURT
_____

FUENTES, Circuit Judge:

Appellants Hoechstetter and Papariella are two white males who were rejected for admission into the Pittsburgh police force in 2001. Appellants filed suit for Title VII violations, alleging that Pittsburgh hired less qualified women and minorities. The District Court granted summary judgment in favor of Pittsburgh, holding that even if Appellants had made out a prima facie case of discrimination (an issue that the District Court did not rule on), Appellants had failed to provide evidence rebutting Pittsburgh's numerous proffered non-discriminatory reasons for passing over Appellants. Appellants argue on appeal that Pittsburgh never offered any definite reason why it refused to hire Appellants, but instead only offered "likely considerations" for failing to hire them. Similarly, Appellants argue that even if the "likely considerations" are accepted as proffered reasons, the fact that Pittsburgh has given different reasons for the failures to hire at different times undercuts the credibility of all of the proffered reasons. Because we find that Pittsburgh gave credible and coherent non-discriminatory reasons for its refusal to hire Appellants, we affirm the District Court's decision.

Pittsburgh tests applicants for its police force and then ranks the applicants by their test results, after a background check, on a certification for appointment list. At that point, the police department's selection committee, headed by Police Chief Robert McNeilly, picks one of the top three candidates to extend a conditional offer of employment. Once the decision is made, the committee chooses their next offer from among the fourth name on the

certification list and the two bypassed candidates from the first offer decision. Once that decision is made, the fifth name is added to the two most recent bypassed candidates, and so on until the class is filled. If a candidate has been bypassed three times, however, his or her name is removed completely from the certification list and replaced with the next-highest name on the list. Appellants were both highly ranked (Hoechstetter was 48th and Papariella was 215th on a list of 406) on certification lists for 1999 and 2000, but were bypassed three times and removed from the list, after which lower-ranked women and minorities were hired for some of the remaining spots. Appellants sued Pittsburgh under Title VII and 42 U.S.C. § 1983, asserting gender and race discrimination.

The District Court correctly recognized that both Appellants' Title VII and § 1983 claims are evaluated under the familiar burden-shifting test set forth by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and its progeny. Accord Jones v. School Dist. of Philadelphia, 198 F.3d 403, 410 (3rd Cir. 1999) (Title VII claims); Stewart v. Rutgers, 120 F.3d 426, 432 (3rd Cir. 1997) (§ 1983 claims). Basically, the plaintiff must first come forward with a prima facie case of discrimination. McDonnell Douglas, 411 U.S. at 802; accord Jones, 198 F.3d at 410 (3rd Cir. 1999) (discrimination claims); Woodson v. Scott Paper Co., 109 F.3d 913, 920, n. 2 (3rd Cir. 1997) (retaliation claims). If she can successfully do so, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for the termination. Id. Finally, if such a reason has been presented, the plaintiff must show that the employer's proffered reasons were mere pretext, and that the termination

was truly motivated by discriminatory animus. Id. The District Court did not reach the issue of whether Appellants had presented a prima facie case; rather, the District Court held that even if such a case had been presented, Appellants had not provided any evidence to undercut Pittsburgh's legitimate nondiscriminatory reasons for passing over Appellants. Specifically, the District Court noted that Hoechstetter's rejection was largely based on past marijuana use, Papariella's on an abysmal credit rating indicating a poor sense of responsibility.

Appellants advance two arguments here to refute the District Court's conclusion, but neither is persuasive. First, Appellants argue that Pittsburgh never actually articulated nondiscriminatory reasons for rejecting them, but only advanced vague "likely" reasons for the rejections in their answers to interrogatories.

> The most likely considerations regarding Hoechstetter related but were not limited to speeding violations, accidents, drug use, and a bad job reference for 1998 job that he left. This answer may be supplemented upon receipt of additional information.
>
> . . .
>
> The most likely considerations regarding Papariella related but were not limited to credit history, debt, lawsuit, and insurance fraud incident in high school. This answer may be supplemented upon receipt of additional information.

App. at 304, 307. We agree with the District Court that these answers did in fact effectively state reasons for refusing to hire Appellants. Although Pittsburgh's use of the term "likely" in response to the interrogatories is inartful, we are satisfied under the circumstances that

-4-

Pittsburgh fulfilled its burden of coming forward with evidence of its real reasons for passing over Appellants. As mentioned, the records of both Appellants contain factors that, if not absolutely disqualifying for employment as a police officer, certainly put Appellants at a severe competitive disadvantage. For the future, if Pittsburgh wishes to maintain its current hiring system, it should take steps to memorialize its actual reasons for competitive hiring decisions. Under the particular circumstances here, however, we are not persuaded to reverse.

Appellants' second argument is that Pittsburgh has proffered shifting and inconsistent nondiscriminatory reasons for the failures to hire Appellants. Specifically, Appellants observe that McNeilly's deposition omitted any reference to Hoechstetter's speeding violations or accidents, but added a reference to a poor job history for both Appellants. App. at 216-222. It is true that in extreme enough cases, an employer's inconsistencies in its proffered reasons for discharge can constitute evidence of pretext. See Abramson v. William Paterson Coll. of N.J., 260 F.3d 265, 284 (3rd Cir. 2001) (employer offered new and unrelated reasons for termination at latter stages of litigation); Smith v. Borough of Wilkinsburg, 147 F.3d 272, 281 (3rd Cir. 1998) (employer gave entirely unrelated rationales for termination to EEOC and trial court); EEOC v. L.B. Foster Co., 123 F.3d 746, 753 (3rd Cir. 1997) (deposition and trial rationales were unrelated). In all of these cases, pretext was evidenced by the decision-maker's having totally different and unrelated rationales for the employment

decision at different stages of the litigation.[1]

Here, however, no such dramatic shift of reasons took place. McNeilly's deposition makes clear that the biggest factor underlying Hoechstetter's rejection was his marijuana use, which is completely consistent with Pittsburgh's interrogatory answers. App. at 217-219. Similarly, , McNeilly referred to Papariella's poor job history only as part of his broader testimony about Papariella's financial irresponsibility, the centerpiece of which was his poor credit history. App. at 220-22. Simply put, there was no contradiction or inconsistency between the interrogatory answers and McNeilly's testimony. Neither did Pittsburgh exchange one set of reasons for a wholly unrelated set, as both the interrogatory answers and the McNeilly testimony depict a consistent picture behind Appellants' rejections: Hoechstetter and Papariella were refused employment after comprehensive reviews of their applications, based largely on the former's marijuana use and the latter's poor credit history and financial irresponsibility. In short, there is simply no evidence of any inconsistencies that would lead a reasonable factfinder to conclude that Pittsburgh's reasons for refusing to hire Appellants were pretextual. Accordingly, we affirm the District Court's judgment.

---

[1] Appellants cite to Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133 (2000), and Chipollini v. Spencer Gifts, Inc., 814 F.2d 893 (3rd Cir. 1987), but contrary to Appellants' characterizations, neither case rested its holding on inconsistencies between the employer's purported reasons for discharge.

TO THE CLERK OF THE COURT:
Kindly file the foregoing Opinion.


                                    /s/ Julio M. Fuentes
                                         Circuit Judge